Joshua Haevernick (SBN 308380)
joshua.haevernick@dentons.com
DENTONS US LLP
1999 Harrison Street, Suite 1300
Oakland, California 94612
Tel: 415 882 5000 / Fax: 415 882 0300

Patrick C. Maxcy (admitted *pro hac vice*)        Andrew D. Telles Wyatt (SBN 316740)
patrick.maxcy@dentons.com                          andrew.wyatt@dentons.com
Keith Moskowitz (admitted *pro hac vice*)          DENTONS US LLP
keith.moskowitz@dentons.com                        4675 MacArthur Court, Suite 1250
DENTONS US LLP                                     Newport Beach, California 92660
233 South Wacker Drive, Suite 5900                 Telephone: (949) 732-3700
Chicago, IL 60606
Telephone: (312) 876-8000

*Attorneys for St. Paul Fire and Marine*
*Insurance Company and Travelers*
*Casualty and Surety Company*

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA AT SAN FRANCISCO

| | |
|---|---|
| In re: | Case No.: 23-30564 |
| THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, | Chapter 11 |
| Debtor and Debtor in Possession. | **ST. PAUL FIRE AND MARINE INSURANCE COMPANY AND TRAVELERS CASUALTY AND SURETY COMPANY'S COMPLAINT FOR DECLARATORY RELIEF; DEMAND FOR JURY TRIAL** |
| ST. PAUL FIRE AND MARINE INSURANCE COMPANY and TRAVELERS CASUALTY AND SURETY COMPANY | Adversary Case No. |
| Plaintiffs | |
| v. | |
| THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, a corporation sole, | |
| Defendant | |

Plaintiffs St. Paul Fire and Marine Insurance Company ("St. Paul") and Travelers Casualty and Surety Company f/k/a Aetna Casualty and Surety Company ("Travelers") (collectively, "Plaintiffs") bring this Complaint for Declaratory Relief in their favor and against Defendant, The Roman Catholic Archbishop of San Francisco ("RCASF" or "Defendant"), and allege as follows:

## NATURE OF THE ACTION

1. The RCASF filed a voluntary petition with this Court under chapter 11 of the Bankruptcy Code on August 21, 2023 (the "Petition Date"), which is pending before the Bankruptcy Court for the Northern District of California (the "Bankruptcy Court"). [ECF No. 1].

2. The United States Trustee for Region 17 appointed the Committee on September 1, 2023, pursuant to 11 U.S.C. § 1102. [ECF No. 58].

3. In October 2019, Governor Gavin Newsom signed AB 218, known as the California Child Victims Act (the "CVA"), which amended California Code of Civil Procedure § 340.1. The CVA created a "lookback window" that allowed victims of childhood sexual assault to revive previously time-barred civil claims. This "lookback window" provided a three-year period, from 2020 to 2022, for survivors to file lawsuits regardless of when the abuse occurred.

4. During the CVA's "lookback window," approximately 541 claimants filed civil actions (the "Underlying Claims") against the RCASF, virtually all of which have been consolidated (along with other Northern California clergy cases naming other defendants) into a coordinated proceeding entitled *In re Northern California Clergy Cases*, Judicial Council Coordination Proceeding ("JCCP") No. 5108 in the Superior Court of California, County of Alameda.

5. Specifically, the claimants allege that for decades the RCASF permitted, denied and concealed the sexual abuse by priests and others employed by the RCASF. The suits also allege that this abuse was the expected result of a culture that

reached the highest levels of the Catholic Church, including the Vatican, which allowed childhood sexual abuse committed by priests and others to thrive.

6.      The Claimants also allege that the RCASF shuffled abusers from parish to parish and Archdiocese to Archdiocese to keep secret the scandal.  This alleged pattern is consistent with a nationwide pattern that has emerged in the Catholic Church as a whole and its Archdioceses and parishes throughout the United States as well as around the world. Grand juries, convened across this country, have published reports detailing the culture of abuse permeating the Catholic Church.  In the past two decades alone, California, New York, New Hampshire, Massachusetts, Pennsylvania, Maine, Missouri, and Colorado have all convened grand juries to investigate allegations of sexual abuse in the Catholic Church. Each has published reports detailing similar tactics utilized to keep secret this insidious criminal behavior.  Similarly, numerous state attorneys general across the United States, including Maine, Maryland, Florida, Illinois, Iowa, and Pennsylvania, initiated investigations into the handling of sexual abuse allegations within the Catholic Church resulting in public reports.  These findings paint a pervasive, deep picture of a systemic culture of abuse and concealment.

7.      The RCASF, together with its affiliated parishes and schools under its control, has now tendered and seeks coverage from Plaintiffs for the respective Underlying Claims that it asserts fall within Plaintiffs' respective policy periods in the 1970s and 1980s.

8.      Plaintiffs contend that their respective policies do not afford coverage to the RCASF for the Underlying Claims that RCASF has tendered to Plaintiffs, including:

> a. that Plaintiffs have no duty to provide coverage for the Underlying Claims that arise from allegations of abuse by Father Joseph Pritchard ("Fr. Pritchard") or, at a minimum, that Plaintiffs have no duty to afford coverage to the RCASF for Underlying Claims that arise from

1    allegations of abuse by Fr. Pritchard after December 31, 1973 based on

2    a 2005 jury verdict, which found that "the Archbishop of San Francisco,

3    by December 31, 1973, kn[e]w or ha[d] reason to know, or was . . .

4    otherwise on notice, that Fr. Pritchard had committed unlawful sexual

5    conduct;"

6    b.   that settlements in 2005 between the RCASF and Plaintiffs in the

7    Clergy III cases, JCCP No. 4359, bar coverage under the Policies for

8    some of the claims brought by one of more of the claimants;

9    c.   that one or more of the Underlying Claims allege sexual abuse or

10   physical abuse or molestation that are excluded under certain

11   endorsements to the Policies;

12   d.   that one or more of the Underlying Claims were not caused by an

13   occurrence or an accidental event that resulted in bodily injury during

14   the policy period that was neither expected nor intended from the

15   standpoint of RCASF;

16   e.   that one or more of the Underlying Claims allege bodily injury outside

17   the Policies respective policy periods;

18   f.   that the limit of liability on certain policies underlying the Aetna Excess

19   Policies have not been exhausted; and

20   g.   that the RCASF has not complied with the terms and conditions of the

21   Policies.

22   9.    St. Paul is presently, actively, and fully defending RCASF, subject to a

23   full and complete reservation of all rights under its policies, at law, and at equity,

24   against certain Underlying Claims the Bankruptcy Court released from the automatic

25   stay instituted upon RCASF's filing of its Chapter 11 petition.  Upon knowledge and

26   belief, Plaintiffs anticipate the Bankruptcy Court will continue to release additional

27   Underlying Claims from the automatic stay throughout the pendency of the RCASF's

28   bankruptcy action.

10. There now exists an actual, justiciable controversy between Plaintiffs and RCASF concerning coverage under certain policies Plaintiffs issued to RCASF. Plaintiffs seek a declaration that they have no obligation to afford coverage under these certain insurance policies for the Underlying Claims tendered to it, or any other similar sexual abuse or molestation claims against RCASF or any of its affiliates that claim insured status under the Plaintiffs' insurance policies for the reasons stated herein.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

12. This adversary proceeding is a non-core proceeding. Plaintiffs do not consent to entry of a final order or judgment by the Bankruptcy Court in this matter.

13. Defendant's Chapter 11 Case No. 23-30564 is currently pending in the United States Bankruptcy Court for the Northern District of California.

14. Venue is proper in this district under 28 U.S.C. § 1409(a) because the bankruptcy case is pending in this district.

15. The requested relief is proper under 28 U.S.C. §§ 2201-2202 (Declaratory Judgment Act) because there now exists an actual, justiciable controversy between Plaintiffs and RCASF.

## THE PARTIES

16. St. Paul is a corporation organized under the laws of the state of Connecticut with its principal place of business in the Connecticut. St. Paul is licensed to operate in the State of California.

17. Travelers is a corporation organized under the laws of the state of Connecticut with its principal place of business in the Connecticut. In 1996, Travelers purchased the property and casualty division of Aetna Casualty and Surety Company. Travelers is admitted to operate in the State of California.

18.     RCASF is a corporation sole established by the Vatican in or about 1853, with its principal place of business in San Francisco, California.  The Archdiocese of San Francisco is made up of three counties: San Francisco County, Marin County, and San Mateo County.  The Archdiocese of San Francisco controls and operates approximately 88 parishes, 120 schools, and one seminary.  The Archdiocese of San Francisco included The Roman Catholic Bishop of Oakland until its separation in or about January 13, 1962, The Roman Catholic Bishop of Santa Rosa until its separation in or about January 13, 1962, and The Roman Catholic Bishop of San Jose until its separation in or about 1981.

## FACTUAL ALLEGATIONS

### A. The St. Paul Insurance Policies

19.     St. Paul issued the following policies to the RCASF:  Policy No. 699NA0626 with a policy period from July 8, 1972 to July 8, 1975; Policy No. 699NA4270 with a policy period from July 8, 1975 to July 8, 1978; Policy No. 699NA5626 with a policy period from July 8, 1978 to July 8, 1981; Policy No. 699NA5737 with a policy period from July 8, 1981 to July 1, 1984; and Policy No. 602NA2857 with a policy period from July 1, 1984 to July 1, 1987 (collectively, the "St. Paul Policies").  True and correct copies of the St. Paul Policies are attached hereto as **Exhibits 1-5**.

20.     The St. Paul Policies provide coverage pursuant to their respective terms, definitions, conditions, limitations, exclusions and endorsements.

### B. The Aetna Excess Insurance Policies

21.     Aetna Casualty and Surety Company issued the following excess policies to the RCASF: Policy No. 005XN29WCA with a policy period from July 8, 1975 to July 8, 1976; Policy No. 005XN67WCA with a policy period from July 8, 1978 to July 8, 1979; Policy No. 005XN80WCA with a policy period from July 8, 1979 to July 8, 1980; Policy No. 005XN90WCA with a policy period from July 8, 1980 to July 8, 1981; Policy No. 005XN97WCA with a policy period from July 8,

1981 to July 1, 1982; Policy No. 005XN182WCA with a policy period from July 1, 1985 to July 1, 1986; and Policy No. 005XN239WCA with a policy period from July 1, 1986 to July 1, 1987 (collectively, the "Aetna Excess Policies") (the St. Paul Policies and Aetna Excess Policies are collectively referred to as the "Policies"). True and correct copies of the Aetna Excess Policies are attached hereto as **Exhibit 6-12**.

22.     The Aetna Excess Policies provide coverage pursuant to their respective terms, definitions, conditions, limitations, exclusions and endorsements.

23.     As an excess insurer, Travelers has no immediate potential coverage obligations unless and until the respective applicable underlying insurance has been exhausted, subject to the terms, definitions, limitations, exclusions and endorsements in each of the respective Aetna Excess Policies. To date, there has been no indication or notice that the applicable limits of insurance underlying the Aetna Excess Policies have been exhausted in accordance with the terms of the Aetna Excess Policies. Therefore, Travelers has no immediate potential coverage obligations.

### C. The RCASF's Prior Knowledge of Abusive Individuals and Widespread Abuse

24.     The complaints filed in the Underlying Claims allege knowing and intentional conduct and suggest RCASF had broad institutional awareness of the sexual abuse problem. This is consistent with allegations in similar lawsuits filed throughout the United States against other entities affiliated with the Catholic Church. The pattern of allegations lends credence to the allegations specific to RCASF. Nevertheless, Plaintiffs have not concluded the allegations in specific Underlying Claims are valid or that any claims are meritorious. Plaintiffs continue to investigate each claim, including whether the allegations of injury caused by sexual abuse were neither expected nor intended from RCASF's standpoint.

25.     Although RCASF provided some information to Plaintiffs about certain Underlying Claims, the information is largely incomplete and insufficient.

Consequently, through this Action, Plaintiffs will seek discovery of information relevant to each claim RCASF submitted to either or both of them. To the extent specific information obtained in discovery does not support coverage as to a particular claim, Plaintiffs will ultimately seek coverage declarations based on the information, as to the specific claim.

26. Aside from the limited information RCASF provided, Plaintiffs also obtained information about alleged sexual abuse within the Catholic Church, and within the Archdiocese specifically, from publicly available sources. This information is relevant in determining whether any Policies provide coverage for any Underlying Claims allegedly within the Policies' respective policy periods.

27. Publicly available information suggests the Church has historically promoted a culture of secrecy intended to protect the Church from scandal. For example, authors Thomas P. Doyle, A. W.R. Sipe, and Patrick J. Wall write in Sex, Priests, and Secret Codes: The Catholic Church's 2,000-Year Paper Trail of Sexual Abuse, published in 2006, that all cardinals in the Catholic Church (the group of bishops who elect the Pope) must take an oath never to divulge information confided to them that "might bring harm or dishonor to the Holy Church."

28. In addition, in *Kavanaugh v. Roman Catholic Archbishop of San Francisco*, San Francisco County Superior Court, Case No. CGC-03-400003, Dennis Kavanaugh filed a civil lawsuit against RCASF alleging the late Father Joseph Pritchard molested him during the early 1970s, while he was a student at St. Martin of Tours, where Pritchard was assigned in 1971. RCASF did not dispute that Kavanaugh was abused. Rather, the sole question put before the jury was whether Pritchard's superiors knew or should have known about the abuse. In answering this sole question, the jury determined "the Archbishop of San Francisco, by December 31, 1973, kn[e]w or ha[d] reason to know, or was . . . otherwise on notice, that Fr. Pritchard had committed unlawful sexual conduct." A true and correct copy of this verdict sheet is attached hereto as **Exhibit 13**. Yet, Pritchard continued working at

St. Martin of Tours until 1979 and was then transferred to St. Nicholas Catholic School in Los Altos, where he continued working until 1988.

29. Further, nearly two decades before Pritchard sexually abused Kavanaugh, in the late 1950s, he allegedly sexually abused his own 10-year old nephew. At the time, Pritchard was teaching at Junipero Serra High School in San Mateo, which was then a part of RCASF. The nephew's mother allegedly reported the abuse to the school in 1959, but was allegedly brushed off.

30. In the Underlying Claims, the claimants, including victims of alleged abuse by Pritchard, contend RCASF's policy of secrecy fostered an environment in which sexual predation by clergy (and other Church representatives) was implicitly condoned and actively covered up by Church officials.

31. The Underlying Claims assert RCASF or its affiliates knew about the sexual abuse of minors. The Master Complaint for the Underlying Claims alleges:

> [T]he RELIGIOUS ENTITY DEFENDANTS, and each of them, knew or should have known that the DOE PERPETRATOR was unfit, posed a risk of harm to minor children, and/or posed a risk of childhood sexual assault to minor children in its care, custody and control. Specifically, RELIGIOUS ENTITY DEFENDANTS knew or should have known, or were otherwise on notice, that the DOE PERPETRATOR had engaged in misconduct that created the risk of childhood sexual assault and failed to take reasonable steps or to implement reasonable safeguards to avoid acts of childhood sexual assault by the DOE PERPETRATOR on minors, including Plaintiff.

(Master Complaint in JCCP 5108, ¶ 33.)

32. The Master Complaint further avers RCASF or its affiliates committed intentional conduct by hiring, not supervising, or transferring to other posts, clergy about whom they had notice regarding abuse of plaintiff or other victims. Specifically, the Master Complaint contends:

> Defendants also intentionally and willfully implemented various measures intended and designed to, or which effectively, made the DOE PERPETRATOR's conduct harder to detect including, but not limited to:
>
> a. Assigning and permitting the DOE PERPETRATOR to remain in a position of authority and trust after DEFENDANT RELIGIOUS

ENTITIES and DOES 1through 500 knew or should have known that was an unfit agent, servant, employee, member and/or volunteer;

b. Assigning and permitting the DOE PERPETRATOR to remain in a position of authority and trust after DEFENDANT RELIGIOUS ENTITIES and DOES 1 through 500 knew or should have known that was in misconduct that created a risk of childhood sexual assault to be perpetrated by the DOE PERPETRATOR;

c. Placing the DOE PERPETRATOR in a separate and secluded environment, including placing him in charge of children, which allowed the DOE PERPETRATOR to sexually and physically interact with and assault the children, including Plaintiff;

d. Authorizing the DOE PERPETRATOR to come into contact with minors, including Plaintiff, without adequate supervision;

e. Failing to inform, or concealing from Plaintiff's parents and law enforcement officials the fact that Plaintiff and others were or may have been sexually assaulted after Defendants knew or should have known that the DOE PERPETRATOR may have sexually assaulted Plaintiff or others, thereby enabling Plaintiff to continue to be endangered and sexually assaulted, and/or creating the circumstance where the Plaintiff and others were less likely to receive medical/mental health care and treatment, thus exacerbating the harm to Plaintiff;

f. Holding out and affirming the DOE PERPETRATOR to Plaintiff and Plaintiffs parents, other children and their parents, and to the community as being in good standing and trustworthy;

g. Failing to take reasonable steps, and to implement reasonable safeguards to avoid acts of unlawful sexual conduct by the DOE PERPETRATOR with students minor children; and

h. Failing to put in place a system or procedure to supervise or monitor employees, volunteers, representatives or agents to insure that they did not molest or assault minors in Defendants' custody or care, including Plaintiff.

(Master Complaint in JCCP 5108, ¶ 36.)

33. The Underlying Claims further assert RCASF or its affiliates failed to stop the sexual abuse, covered it up, and then lied about it. The Master Complaint alleges that: "This failure was a part of Defendants' intended plan and arrangement to conceal wrongful acts, to avoid and inhibit detection, to block public disclosure, to

avoid scandal, to avoid the disclosure of their tolerance of child sexual molestation and assault, to preserve a false appearance of propriety, and to avoid investigation and action by public authority including law enforcement." (Master Complaint in JCCP 5108, ¶ 39.) The Underlying Claims allege different legal theories, including intentional torts, strict liability, and negligence.

**D. The RCASF Released Certain Claims in the 2005 Clergy III Settlement Agreement.**

34.    Additionally, one claimant in the Underlying Claims–identified in his Complaint as John SF-1 Doe, San Francisco County Superior Court Case No. CGC-20-584162 and on his Proof of Claim, filed in the Main Bankruptcy action as 564-383–alleges Pritchard sexually molested him between 1974 and 1977. This claimant's two brothers previously alleged Pritchard molested them.

35.    The claims relating to the two brothers were resolved through a Confidential Settlement Agreement and Mutual Release ("Release"), entered in July 2005, between the RCASF and its insurers, including Plaintiffs. Paragraph 3.02 in the Release states RCASF releases all past, present, and future actions, known or unknown, which relate in any manner to the "Abuse Claims." Paragraph 4.01 in the Release states it was the Parties' intention that "the Insurers shall have no further financial obligation of any kind with respect to the 'Abuse Claims.'"

36.    The term "Abuse Claims" is defined in Paragraph 1.12 in the Release to include:

> "Abuse Claims" means (1) the lawsuits identified in Rider A to this Agreement, and (2) any other claim asserted by or on behalf of the plaintiffs in the lawsuits identified in Rider A and/or any claim asserted by any person related to a plaintiff by birth, ... which claim arises out of or is based, directly or indirectly, upon actual or alleged acts of sexual abuse. . . and/or any other actual or alleged conduct constituting "childhood sexual abuse" for purposes of Cal. Civ. Proc. Code 340.1....

37.     The lawsuit filed on behalf of the two brothers is listed on Rider A to the Release. Since claimant John SF-1 Doe is a person related by birth to the two brothers, RCASF released his claim in 2005.  Moreover, Plaintiffs are informed and believe and thereon allege RCASF was aware John SF-1 Doe was also one of Pritchard's alleged victims when RCASF entered into the Release.  Finally, inasmuch as a jury, in 2005, determined RCASF knew from at least December 31, 1973, that Pritchard sexually abused children, Plaintiffs have no potential payment obligations with respect to John SF-1 Doe's claim, who alleges the abuse started in 1974.

## FIRST CLAIM FOR RELIEF
### (DECLARATORY JUDGMENT – NO DUTY TO DEFEND OR INDEMNIFY UNDERLYING CLAIMS ALLEGING ABUSE BY FATHER JOSEPH PRITCHARD)

38.     Plaintiffs incorporate, restate, and reallege all the preceding paragraphs as though fully set forth herein.

39.     Pursuant to 28 U.S.C. § 2201, this Court may declare the rights and obligations of the parties under the Policies on the grounds that an actual controversy exists.

40.     An actual and real controversy exists herein between Plaintiffs and RCASF whether Plaintiffs have any obligation to defend and/or indemnify RCASF for Underlying Claims alleging abuse by Father Joseph Pritchard.

41.     The Underlying Claims accuse Prichard of sexually abusing minors, and in 2003, his nephew filed suit against him, alleging childhood sexual abuse that allegedly began in 1957 or 1958 and allegedly ended in 1959, when his mother, Pritchard's sister, allegedly reported him to school officials at Junipero Serra High School.

42.     RCASF and/or its affiliates engaged in a pattern of continuously reassigning and transferring Pritchard to different parishes despite knowledge that he was a pedophile.

43. RCASF and/or its affiliates allowed and cultivated a culture of opportunity for Pritchard to sexually abuse children.

44. RCASF and/or its affiliates failed to investigate prior allegations of sexual abuse of children by Pritchard and failed to report the abuse to the authorities.

45. The Underlying Claims alleged that despite receiving credible allegations of sexual abuse of children by Pritchard, RCASF and/or its affiliates named in the Underlying Claims alleging abuse by Pritchard, acted to conceal these allegations in an effort to avoid scandal and accountability.

46. Plaintiffs have no obligation under the Policies to defend or indemnify RCASF or its affiliates for the Underlying Claims alleging abuse by Pritchard because it is alleged RCASF and its affiliates knew the subject abuse alleged in these lawsuits was certain or substantially certain to occur, and therefore the alleged injury from the abuse was either expected or intended from the standpoint of RCASF and was otherwise not fortuitous.

47. At a minimum, the 2005 jury verdict in the *Kavanaugh* matter, which found that "the Archbishop of San Francisco, by December 31, 1973, kn[e]w or ha[d] reason to know, or was . . . otherwise on notice, that Father Joseph Pritchard had committed unlawful sexual conduct," has a preclusive effect for any Underlying Claims brought RCASF and its affiliates that allege abuse by Pritchard after December 31, 1973, because:

    a. The issue in this case is identical to the issue decided in the prior *Kavanaugh* matter;

    b. The issue was actually litigated in the *Kavanaugh* matter;

    c. The issue's determination was a critical and necessary part of the judgment in the *Kavanaugh* case; and

    d. The party against whom preclusion is asserted (*i.e.*, the RCASF) had a full and fair opportunity to litigate the issue in the *Kavanaugh* case.

Under 28 U.S.C.A. § 1738, federal courts must give the same preclusive effect to a state court judgment as it would receive in the courts of the state where the judgment was rendered. *See In re Mickletz*, 544 B.R. 804 (2016).

48.  Accordingly, Plaintiffs request this Court declare that Plaintiffs have no obligations under the Policies to defend or indemnify RCASF or its affiliates for the Underlying Claims alleging abuse by Father Joseph Pritchard.

49.  A judicial determination is necessary and appropriate at this time under the circumstances so the parties may ascertain their aforementioned rights and duties.  Said controversy is incapable of resolution without a judicial determination.

**SECOND CLAIM FOR RELIEF**
**(DECLARATORY JUDGMENT – NO DUTY TO DEFEND OR INDEMNIFY UNDERLYING CLAIMS THAT WERE RELEASED BY THE 2005 SETTLEMENT)**

50.  Plaintiffs incorporate, restate, and reallege all the preceding paragraphs as though fully set forth herein.

51.  Pursuant to 28 U.S.C. § 2201, this Court may declare the rights and obligations of the parties under the Policies on the grounds that an actual controversy exists.

52.  An actual and real controversy exists herein between Plaintiffs and RCASF regarding the 2005 Release between RCASF and its insurers, including Plaintiffs.  Paragraph 3.02 of that Release provides that the RCASF releases all past, present and future actions, known or unknown, which relate in any manner to the "Abuse Claims."  Paragraph 4.01 of the Release provides that it was the intention of the Parties that "the Insurers shall have no further financial obligation of any kind with respect to the Abuse Claims."

53.  The term "Abuse Claims" is defined in Paragraph 1.12 of the Release to include:

> "Abuse Claims" means (1) the lawsuits identified in Rider A to this Agreement, and (2) any other claim asserted by or on behalf of the plaintiffs in the lawsuits identified in

> Rider A and/or any claim asserted by any person related to a plaintiff by birth, ... which claim arises out of or is based, directly or indirectly, upon actual or alleged acts of sexual abuse. . .and/or any other actual or alleged conduct constituting "childhood sexual abuse" for purposes of Cal. Civ. Proc. Code 340.1....

54.     Lawsuits that were filed on behalf of various claimants, which settled in 2005, are listed on Rider A to the Release. Plaintiffs are informed and believe and, on that basis, allege that several claimants in the Underlying Claims, are related by birth to claimants that settled their claims in 2005, and on that basis, their claims were released by the RCASF.  Hence, Plaintiffs have no duty or obligation to defend the RCASF for those Underlying Claims.

55.     Finally, inasmuch as a jury, in 2005, determined that the RCASF knew from at least December 31, 1973, that Fr. Pritchard sexually abused children, Plaintiffs have no obligations under the Policies with respect to the claim of John SF-1 Doe, who alleges that Fr. Pritchard first began to abuse him in 1974.

56.     Accordingly, Plaintiffs request this Court declare they have no obligation under the Policies to defend or indemnify RCASF or its affiliates for Underlying Claims based on the 2005 Release.

57.     A judicial determination is necessary and appropriate at this time under the circumstances so the parties may ascertain their aforementioned rights and duties.  Said controversy is incapable of resolution without a judicial determination.

### THIRD CLAIM FOR RELIEF
### (DECLARATORY JUDGMENT – NO DUTY TO DEFEND OR INDEMNIFY – NO OCCURRENCE)

58.     Plaintiffs incorporate, restate, and reallege all the preceding paragraphs as though fully set forth herein.

59.     Pursuant to 28 U.S.C. § 2201, this Court may declare the rights and obligations of the parties under the Policies on the grounds that an actual controversy exists.

1  60.    Plaintiffs issued the Policies listed above in Paragraphs 18 and 20 to
2  RCASF.

3  61.    The Policies only cover injuries to a third party caused by an
4  "occurrence," or an "accidental event," defined as an accident or event, including
5  continuous or repeated exposure to conditions, which results in injury, which is
6  neither expected nor intended from the standpoint of the insured, and which
7  happened during the policy's stated "policy period."

8  62.    Publicly available information suggests that the injury caused by the
9  sexual abuse alleged in the Underlying Claims was either expected or intended
10  from RCASF's standpoint.

11  63.    Since the Underlying Claims were not caused by an "occurrence"
12  resulting in personal injury or damage during the policy period that was neither
13  expected nor intended from RCASF's standpoint, there is no possibility of
14  coverage for any of these claims under the Policies.

15  64.    An actual and justiciable controversy exists among the parties.
16  Plaintiffs desire a judicial determination of the parties' respective rights and duties
17  under the Policies.  Accordingly, Plaintiffs request this Court declare they have no
18  obligation under the Policies to defend or indemnify RCASF or its affiliates for the
19  Underlying Claims.

20  65.    A judicial determination is necessary and appropriate at this time
21  under the circumstances so the parties may ascertain their aforementioned rights
22  and duties.  Said controversy is incapable of resolution without a judicial
23  determination.

## FOURTH CLAIM FOR RELIEF
### (DECLARATORY JUDGMENT – NO DUTY TO DEFEND OR INDEMNIFY FOR ANY INJURY OUTSIDE EACH POLICY'S RESPECTIVE POLICY PERIOD)

24
25
26

27  66.    Plaintiffs incorporate, restate, and reallege all the preceding
28  paragraphs as though fully set forth herein.

67.     Pursuant to 28 U.S.C. § 2201, this Court may declare the rights and obligations of the parties under the Policies on the grounds that an actual controversy exists.

68.     An actual and real controversy exists herein between Plaintiffs and the RCASF regarding whether Plaintiffs owe any duty or obligation to RCASF for claims of sexual abuse that resulted in injury outside the Policies' respective policy periods.

69.     Plaintiffs seek a declaration they have no obligation to afford coverage to RCASF or its affiliates for any injury that occurred outside the Policies' respective policy periods.

70.     Plaintiffs further seek a declaration that if any obligation exists to provide coverage, that any such obligation is limited to the portion of any injury that happened during the Policies' respective policy periods.

71.     A judicial determination is necessary and appropriate at this time under the circumstances so the parties may ascertain their aforementioned rights and duties.  Said controversy is incapable of resolution without a judicial determination.

## FIFTH CLAIM FOR RELIEF
### (DECLARATORY RELIEF – NO EXHAUSTION OF PRIMARY LIMITS)

72.     Plaintiffs incorporate, restate, and reallege all the preceding paragraphs as though fully set forth herein.

73.     Pursuant to 28 U.S.C. § 2201, this Court may declare the rights and obligations of the parties under the Policies on the grounds that an actual controversy exists.

74.     RCASF has demanded that Travelers defend it under the Aetna Excess Policies in connection with the Underlying Claims.

75.     The Aetna Excess Policies provide coverage for an "Excess Net Loss," which is defined in the Aetna Excess Policies as: ". . . that part of the total

of all sums which the INSURED becomes legally obligated to pay or has paid, as damages on account of any one accident or occurrence, and which would be covered by the terms of the Controlling Underlying Insurance, if written without any limit of liability, less realized recoveries and salvages, which is in excess of any self-insured retention and the total of the applicable limits of liability of all policies described in Section 3. Schedule of Underlying Insurance, whether or not such policies are in force."

76. Unless and until the applicable underlying policy limits are exhausted in accordance with the Aetna Excess Policies' terms, coverage under the Aetna Excess Policies does not attach for the Underlying Claims.

77. Travelers seeks a declaration regarding its rights and duties under the Aetna Excess Policies concerning the application of the foregoing provisions and attachment of coverage under the Aetna Excess Policies.

78. A judicial determination is necessary and appropriate at this time under the circumstances in order that the parties may ascertain their rights and duties as aforementioned. Said controversy is incapable of resolution without a judicial determination.

## SIXTH CLAIM FOR RELIEF
### (DECLARATORY JUDGMENT – NO COVERAGE PURSUANT TO THE POLICIES' TERMS AND CONDITIONS)

79. Plaintiffs incorporate, restate, and reallege all the preceding paragraphs as though fully set forth herein.

80. Pursuant to 28 U.S.C. § 2201, this Court may declare the rights and obligations of the parties under the Policies on the grounds that an actual controversy exists.

81. RCASF demanded that Plaintiffs defend and indemnify it under the Policies in connection with the Underlying Claims.

82. An actual and real controversy exists between Plaintiffs and RCASF regarding whether RCASF has satisfied its obligations under the Policies'

applicable terms, definitions, limitations, exclusions, and endorsements to sufficiently prove the existence of potential and/or actual coverage in the first instance, and whether RCASF breached any term or condition in the Policies and, therefore, whether Plaintiffs have an obligation to defend or indemnify RCASF. This includes, without limitation:

    a. to the extent RCASF failed to provide timely notice of the Underlying Claims, as required under the Polices;

    b. to the extent the "Sexual or Physical Abuse Exclusion Endorsements" applicable to the St Paul Policies for the July 1, 1984 to July 1, 1987 period or the "Sexual of Physical Abuse Exclusion Endorsement" applicable to the Aetna Excess Policies for the July 1, 1985 to July 1, 1986 and July 1, 1986 to July 1, 1987 periods preclude coverage for the Underlying Claims;

    c. to the extent RCASF made voluntary payments, assumed obligations, or incurred expenses, there is no coverage under the Policies for any such voluntary payment(s) or incurred expense(s);

    d. to the extent the remaining terms, definitions, limitations, exclusions, and endorsements under the Policies bar coverage for the Underlying Claims; or

    e. to the extent RCASF failed to cooperate with Plaintiffs.

83. Plaintiffs seek a declaration regarding their respective rights and duties under the Policies concerning the application of the foregoing provisions of the Policies.

84. A judicial determination is necessary and appropriate at this time under the circumstances in order that the parties may ascertain their rights and duties as aforementioned. Said controversy is incapable of resolution without a judicial determination.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request this Court enter judgment in their favor and against RCASF as follows:

1. declaring that Plaintiffs have no obligation under the Policies to defend or indemnify RCASF or its affiliates for the Underlying Claims alleging abuse by Father Joseph Pritchard;

2. declaring that Plaintiffs have no obligation under the Policies to defend or indemnify RCASF or its affiliates for any Underlying Claims released in the 2005 Settlement;

3. declaring that Plaintiffs have no obligation under the Policies to defend or indemnify RCASF or its affiliates because the Underlying Claims were not caused by an "occurrence" resulting in injury during the policy period that was neither expected nor intended from RCASF's standpoint;

4. declaring that Plaintiffs only have an obligation to afford coverage to RCASF and its affiliates, if at all, under the Policies for the portion of any Underlying Claim alleging injury during the each policy's respective policy period and that Plaintiffs have no obligation to afford coverage for any injury that happened outside the Policies' respective policy periods;

5. declaring that unless or until the underlying limits of the respective insurance policies underlying the Aetna Excess Policies are exhausted, coverage under the Aetna Excess Policies do not attach for any of the Underlying Claims;

6. declaring whether RCASF has failed to satisfy, or has otherwise breached, any term or condition in the Policies, resulting in Plaintiffs having no obligation to defend or indemnify RCASF against any, each, or all of the Underlying Claims; and

/ / /

/ / /

/ / /

/ / /

7.    granting any other relief the Court deems just and proper.

Dated: January 16, 2026                    Respectfully submitted,

By: */s/ Joshua Haevernick*
Joshua Haevernick (SBN 308380)
joshua.haevernick@dentons.com
DENTONS US LLP
1999 Harrison Street, Suite 1300
Oakland, California 94612
Tel: 415 882 5000 / Fax: 415 882 0300

Patrick C. Maxcy (*pro hac vice*)
patrick.maxcy@dentons.com
Keith Moskowitz (*pro hac vice*)
keith.moskowitz@dentons.com
DENTONS US LLP
233 South Wacker Drive, Suite 5900
Chicago, IL 60606
Telephone: (312) 876-8000
Facsimile: (312) 876-7934

Andrew D. Telles Wyatt (SBN 316740)
andrew.wyatt@dentons.com
4675 MacArthur Court, Suite 1250
Newport Beach, California 92660
Telephone: (949) 732-3700

*Attorneys for St. Paul Fire and Marine*
*Insurance Company and Travelers Casualty and*
*Surety Company*

## **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs hereby demand a jury trial on all issues so triable.